

555 Fifth Avenue, 17th Floor
New York, New York 10017
212-856-7210 PH
212-856-7211 FX
dhc@dhcavanaugh.net
www.dhcavanaugh.com

August 22, 2014

**By ECF**

Hon. William H. Pauley, III
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

       Re:   Ketel One Worldwide B.V. et ano
               v. Arcadia Imports LLC
               13 Civ. 9026 (WHP)

Dear Judge Pauley:

       We represent the Defendant in the above-captioned matter, and we are writing to advise Your Honor of the status of settlement discussions pursuant to Your Honor's August 1, 2014 Scheduling Order.  To date, this matter has not been settled.

       **Background**

       Arcadia is a small, young importer that is trying to build its business.  Although Arcadia does not believe that Ketel One would prevail on any of its allegations, it has agreed to take certain affirmative actions that have been requested by Ketel One in the effort to end this litigation because it simply cannot afford a lengthy and costly litigation.  These actions are related to the two main issues: (1) the DUTCHCRAFT label and (2) comparative marketing engaged in by retailers selling both DUTCHCRAFT and KETEL ONE brand vodkas.

       First, Arcadia does not believe that its label infringed upon KETEL ONE trade dress, and in the three years that it has been sold by retailers it has never been confused with KETEL ONE.  In fact, Arcadia does not even consider itself a competitor to Plaintiffs, but rather to other vodkas that are similar in price.  Despite these facts, Arcadia not only agreed to change it label but has already changed the label to one that is acceptable to Plaintiffs.

       Second, Defendant does not believe that Plaintiffs have any claim with respect to the comparative marketing of which they complain.  Retailers are allowed to compare different products in their stores.  In fact, the comparisons that Plaintiffs describe do not infringe upon the KETEL ONE mark and, if anything, silencing retailers from making such comparisons may be a

Hon. William H. Pauley, III
United States District Judge
August 22, 2014
Page 2 of 4

violation of commercial speech. However, in an effort to end this litigation, Arcadia has agreed to take certain actions to end and prevent any such comparisons. Arcadia has agreed to send a notice to all of its distributors asking that they inform their retailers that this case has been settled; and, if there are comparisons by a retailer in the future, Arcadia has agreed to send a notice to the distributor who sells to the retailer making those comparisons asking them to cease and desist. Plaintiffs are not satisfied with this effort and insist that Defendant contact the retailers directly to notify them to cease and desist.

Arcadia will not contact the retailers directly because it cannot be held responsible for the actions of its retailers and, perhaps more importantly, it will not take actions to destroy relationships with retailers who are all new customers with whom it has not even yet had the opportunity to forge relationships. Arcadia is currently at the stage where it is building its DUTCHCRAFT business and it does not have direct relationships with retailers; each retailer that Arcadia can get into is a major success and they want to cultivate those potential relationships. It would be absurd for Arcadia to directly contact the retailers and instruct them what they should or should not say about products in their own stores. There is a great possibility that this would annoy the retailers with whom it is trying to build its business and the retailers would opt to stop selling DUTCHCRAFT altogether. Arcadia is willing to contact the distributors, but it cannot agree to take affirmative actions that will destroy its own business in order to end a litigation in which there are no claims left.

**Recent Settlement Efforts**

Following the August 1 conference, we consulted with our client regarding the extent to which it could communicate with retailers of its vodka. Based upon the realities of our client's business, being a small importer continuing to market and promote a relatively new brand, we sent Plaintiffs' counsel a revised settlement agreement with an expanded and more detailed notice and cure provision. This provided for all communications regarding the settlement of this action and allegations of any future conduct objectionable to Plaintiffs to be through Defendant's distributors. We explained the reasons for this in our cover email:

> Attached is a revised Paragraph 3. Given the realities of the market for our client, this is the most that we can commit to do in the event your clients believe that a distributor or retailer of our client's vodka is making unfair comparisons with Ketel One. Our client does not have the market clout that your clients have to demand the kind of depletion reports and other information about retailers. Its distributors are under no obligation to provide it with any information about their retailer customers. Moreover, what an importer can and cannot do in its dealings with distributors and retailers is regulated from state to state, as I am sure you and your clients know. All our client should be obligated to do is request

> that its distributors refrain from certain actions, and if they do not, to request again.
>
> Our client should not be put in the position of policing a large number of retailers, over whom it has no legal control. Indeed, this entire issue grew out of your clients' allegation that a retailer of Dutchcraft vodka compared it to Ketel One. We have never been provided with the details of this, to even determine if such comparison was permissible or not. Despite that, we were and remain willing to request that distributors not make such comparisons and to ask that they pass this request on to their retailer customers. To demand more is to put our client in a position of severely jeopardizing its business and possibly violating state law.
>
> Your clients got more than what they went into court to legitimately obtain, namely, the original packaging out of the market and an agreement to request no potentially unfair action in the future. To seek more would be overreaching and an abuse of the court and the law.

On August 15, Plaintiffs' counsel sent us a revised settlement agreement. While this did incorporate many of our changes, it continued to insist on Defendant communicating with retailers. It attempted to define what retailers would be required to receive the agreed-upon letter, but it is too ambiguous as it is written.. On August 20, we sent Plaintiffs' counsel revisions of the problem sections with the following explanation of why the communications must remain through Defendant's distributors:

> Thank you for the further revised draft agreement. We appreciate your efforts to acknowledge our concerns and accept certain of our changes. The treatment of our client's relationship with retailers remains troublesome. Since this agreement should put to rest all claims against our client and provide a clear framework for any future contingencies, we believe that there should be no doubt regarding how Arcadia has communicated to its customers, namely its distributors, and how it will communicate with them in the event of any activities by third parties in the future that your clients may find objectionable.

> \* \* \*

> We trust that you and your clients will agree that with the above changes the agreement now provides clear and unambiguous terms

Hon. William H. Pauley, III
United States District Judge
August 22, 2014
Page 4 of 4

>   by which the parties can continue to co-exist in the marketplace
>   and deal with any perceived problems in the future.

    Late afternoon on August 21, we spoke with Plaintiffs' counsel and further explained all of the above reasons why Defendant is only willing to communicate through its distributors, and why this is more than sufficient to provide Plaintiffs with the security that third parties will refrain from future actions Plaintiffs may deem objectionable.  Due to the presence of multiple parties in interest in different time zones, Plaintiffs' counsel was unable to communicate further with us before the filing of this letter.

    The parties continue to be at an impasse.  We welcome and appreciate Your Honor's continued assistance in resolving this matter.

    Respectfully submitted,

    D H CAVANAUGH ASSOCIATES

    /Dennis H. Cavanaugh/
By:_____
    Dennis H. Cavanaugh

cc:    Brendan J. O'Rourke, Esq. (via email)
        Nadine Y. From, Esq. (via email)